**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HENRY JOSEPH JAQUEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-1066-F** |
| | ) | |
| **LAWTON CORRECTIONAL** | ) | |
| **FACILITY; JUSTIN JONES, Director** | ) | |
| **of ODOC, in his personal and** | ) | |
| **official capacities; C. CHESTER,** | ) | |
| **Warden, L.C.F., in his personal and** | ) | |
| **official capacities; RICK WHITTEN,** | ) | |
| **Security Warden L.C.F., in his** | ) | |
| **personal and official capacities;** | ) | |
| **MRS. STOUFFER, Health** | ) | |
| **Administrator L.C.F., in her personal** | ) | |
| **and official capacities; MIKE** | ) | |
| **CARPENTER, Chief of Security** | ) | |
| **L.A.R.C., in his personal and official** | ) | |
| **capacities; SGT. BRASHEARS,** | ) | |
| **Sergeant L.C.F., in his personal and** | ) | |
| **official capacities; SGT. W. M.** | ) | |
| **BJORK, Sergeant L.C.F., in his** | ) | |
| **personal and official capacities;** | ) | |
| **SGT. HILL, Sergeant L.C.F., in his** | ) | |
| **personal and official capacities;** | ) | |
| **and SABIER HILDNER, L.C.F., in his** | ) | |
| **personal and official capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION ON THE MOTION
TO DISMISS/MOTION FOR SUMMARY JUDGMENT
<u>BY THE PRIVATE PRISON DEFENDANTS</u>**

Invoking 42 U.S.C. § 1983, Henry Jaquez has sued state and private

prison officials in their individual and official capacities.  Docs. 1, 10.  The

private prison defendants, C. Chester, Rick Whitten, Sgt. Brashears, Sgt. Bjork,

Sgt. Hill, Mrs. Stouffer, and Sabier Hildner, move for dismissal and/or summary

judgment in their individual capacities.  Doc. 61.

After review, the undersigned recommends that the motion be granted in

part and denied in part.  Adoption of these recommendations will terminate all

of the claims against defendants Chester, Stouffer, Brashears, Bjork, Hill, and

Hildner.  Four claims against Defendant Whitten in his individual and official

capacities will survive.

## I.   The Plaintiff's claims.

The Plaintiff raises sixteen claims[1] against the private prison officials[2]

alleging that his constitutional rights were violated at the Lawton Correctional

Facility through:

Claim 1.   denial of cleaning supplies from July 18, 2011, to
           August 29, 2011;

Claim 2.   lack of

           (a) mattress and pillow from July 18, 2011, to August 3,
           2011, and

---

[1]     The Plaintiff did not individually number his claims.  The undersigned has
done so to avoid confusion.  In the same vein, the undersigned has elected to cite
to the Court's CM/ECF pagination for all documents.

[2]     The Plaintiff also raised an additional claim (involving the loss of property)
which did not involve the private prison officials.  *See* Doc. 1, at 10.

(b) sheets or blankets from July 18, 2011, to August 3, 2011;

Claim 3.   from July 18, 2011, to August 3, 2011

(a) allowance of only minimal showers, and
(b) complete lack of soap, shampoo, towel, deodorant, toothpaste, and toothbrush ("hygiene items");

Claim 4.   lack of clean clothes from July 18, 2011, to August 3, 2011;

Claim 5.   denial of outdoor recreation from July 18, 2011, to August 3, 2011, and August 20, 2011, to September 21, 2011;

Claim 6.   lack of writing supplies, legal work, personal addresses from July 18, 2011, to August 3, 2011;

Claim 7.   denial of

(a)   any Bible from July 18, 2011, to August 29, 2011, and
(b)   his personal study Bible thereafter;

Claim 8.   denial of all property, clothing, and hygiene items from August 25, 2011, to August 29, 2011;

Claim 9.   failure to provide a sack lunch on

(a)   August 23, 2011,
(b)   September 4, 2011, and
(c)   September 6, 2011;

Claim 10.   denial of a shower on September 5, 2011;

Claim 11.   lack of liquids and running water from September 12, 2011, to September 13, 2011;

Claim 12.    limitation to sack lunches from August 21, 2011, to
             September 7, 2011;

Claim 13.    lack of contact with a psychologist or case manager
             after July 2011;

Claim 14.    only a "small amount" of law library access;

Claim 15.    denial of a haircut, sack lunch, and running water from
             September 17, 2011, to September 19, 2011; and

Claim 16.    excessive force on July 18, 2011.

Doc. 1, at 2-11.[3]

## II.    Standard for dismissal or summary judgment.

The Court's responsibility in considering a civil complaint filed by a
prisoner who, like the Plaintiff, is allowed to proceed in forma pauperis in
accordance with 28 U.S.C. §1915(b)(1) is to determine as soon as possible if the
cause of action is frivolous, malicious, fails to state a claim upon which relief
may be granted, or seeks monetary relief from a defendant who is immune from
such a claim.    28 U.S.C. §§ 1915A, 1915(e)(2)(B).

---

[3]    Summarizing the Plaintiff's allegations, the Defendants note that his
claims span through September 2011.  Doc. 61, at 9.  The Plaintiff objects,
arguing that his conditions of confinement claims span from "the months of July
18th, until approximately Jan. 25, 2012." Doc. 65, at 4.  However, the Plaintiff
gave very specific dates in his complaint, and the Defendants relied on those
dates.

In part, the Defendants urge dismissal for failure to state a valid claim. Doc. 61, at 14-17, 22-23, 24-30.   Under Fed. R. Civ. P. 12(b)(6),[4] the Court considers whether the Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In applying this standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the Plaintiff.  *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

The private prison officials alternatively move for summary judgment. Doc. 61, at 11-13, 17-22, 23-25.  The Court should grant summary judgment when "there is no genuine dispute as to any material fact and [the movants are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties may establish the existence or nonexistence of a material disputed fact through:

---

[4]     The Defendants fail to cite Fed. R. Civ. P. 12(b)(6).  *See* Doc. 61, *passim*. Regardless, Rule 12(b)(6) applies to their argument that the Plaintiff has failed to state a valid claim for relief.  *See* Fed. R. Civ. P. 12(b)(6) (recognizing "failure to state a claim upon which relief can be granted" as a defense).

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or"

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). When a summary judgment motion is filed, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co., Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted). The Plaintiff verified his complaint, and thus the Court treats it as a sworn affidavit. *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (per curia) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment" (citations omitted)).

The burden of persuasion falls on the Plaintiff for the elements of a prima facie case. *See Doe v. Bagan*, 41 F.3d 571, 573 (10th Cir. 1994) (stating that the plaintiffs bear the burden of proof on the "essential" elements of a cause of action arising under § 1983). Because the Defendants do not bear the burden of persuasion, their only obligation is to produce affirmative evidence negating an essential element of the claims or to show that the Plaintiff lacks evidence to carry his burden of persuasion. *See id.* Once the Defendants satisfy their burden of production, the Plaintiff can only avoid summary judgment if he

presents evidence creating "an inference of the existence of each element essential to the case with respect to which [he] has the burden of proof." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (citations omitted).

However, on their affirmative defense involving nonexhaustion of administrative remedies, the Defendants bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding "that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act]"); *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the [Prison Litigation Reform Act] lies with the defendant."). As a result, the Defendants must demonstrate the absence of a disputed material fact on the issue of exhaustion. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the Defendants satisfy this burden, the Plaintiff would incur a duty to "demonstrate with specificity the existence of a disputed material fact" or "show that remedies were unavailable to him as a result of" the actions of prison officials. *Id.*; *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). In the absence of either showing, the Defendants would be entitled to summary judgment on the affirmative defense. *See Hutchinson*, 105 F.3d at 564.

**III.   The Defendants' request for summary judgment or dismissal.**

The Defendants seek summary judgment on, or dismissal of, all the Plaintiff's claims.  The motion should be granted in part and denied in part.

> **A.    The Defendants' request for summary judgment based on nonexhaustion of administrative remedies.**

The Defendants acknowledge exhaustion of administrative remedies on the Plaintiff's claims involving denial of his personal study Bible (Claim 7(b)), denial of a sack lunch on August 23, 2011, and September 4, 2011, (Claims 9(a), (b)), and denial of a shower on September 5, 2011 (Claim 10).  Doc. 61, at 11.  For all of the Plaintiff's remaining claims however, the Defendants seek summary judgment on grounds that the Plaintiff failed to properly exhaust administrative remedies at the facility level.  *Id.* at 11-13.  For some of the claims, the Defendants are correct and should be granted summary judgment.  For other claims, a genuine issue of material fact remains, and the Court should deny the motion for summary judgment.

> **1.    The statutory exhaustion requirement.**

Federal law provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

This law "requires proper exhaustion" of the prison's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

### 2.   The administrative process.

To properly exhaust claims at the administrative level, the Plaintiff had to follow the "Offender Grievance Process" set forth in Department of Corrections OP-090124.   *See* Special Report, Exhibit 17 (Mar. 13, 2012).

The first requirement involved an attempt to informally resolve the issue with the relevant staff member.   *See id.* at 5.   If that attempt proved unsuccessful, the Plaintiff could file a request to staff.   *See id.*   If the request to staff went unanswered for 30 days, the Plaintiff could file a grievance complaining about the lack of a response.   *See id.* at 6.   If the Plaintiff received a response to his request to staff but remained dissatisfied, he could file a grievance with the facility head.   *See id.*[5]   Finally, if the Plaintiff remained dissatisfied with the response to the grievance, he could appeal to the administrative review authority.   *See id.* at 10.

---

[5]   The policy states that the grievance must be filed with the "reviewing authority."   Special Report, Exhibit 17 at 7.   The "reviewing authority" is elsewhere defined as the facility head.   *Id.* at 2.

### 3.  The availability of the administrative process.

Despite these procedures, if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted).  The Plaintiff believes that his attempts to exhaust administrative remedies were thwarted, and offers lengthy explanations spanning multiple documents.  *See, e.g.,* Doc. 1, at 5-6; *id.* Exhibit A at 1, 14, 19-22, 24, 27, 31, 35, 38-39, 41, 43, 45, 52, 53-54, 58; Doc. 65, at 5-13.

With liberal construction, the Plaintiff's arguments boil down to three complaints:  (1) officials were meticulous about requiring proper exhaustion, resulting in numerous rejections of requests to staff and grievances; (2) officials refused to respond to requests to staff, making it impossible to continue through the grievance process; and, (3) prison officials placed the Plaintiff on grievance restriction.  But none of these arguments create a genuine issue of material fact regarding the availability of the administrative remedies.

### a.  The  procedural  complexities  of  the administrative process.

The Plaintiff complains that prison officials can come up with "30 to 40" different reasons for rejecting a request to staff or grievance, and it is clear that

the Plaintiff is personally frustrated with the Defendants' meticulousness with respect to proper exhaustion.  Doc. 1, at 6.  The Plaintiff appears to seek relief from these procedural rules, arguing that he complied with the spirit of the exhaustion process through attempting to notify officials of his complaints.  *See id.*  However, this argument is unpersuasive.

As the Supreme Court held in *Woodford*,

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'  . . .  *Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules* because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

548 U.S. at 90-91 (citations and footnote omitted) (emphasis added).

Based on *Woodford*, the Plaintiff cannot successfully argue that because prison officials demanded compliance with the procedural rules, administrative remedies became unavailable to him.  And, the fact that prison officials may have become aware of the underlying issues through improperly filed documents does not excuse proper exhaustion.  *See Jernigan v. Stuchell*, 304 F.3d 1030,

1032 (10th Cir. 2002) (stating that "the doctrine of substantial compliance does not apply" to exhaustion under 42 U.S.C. § 1997e).

### b. Prison officials' alleged refusal to respond to request to staff.

The Plaintiff's overriding argument involves his claim that private prison officials often simply refused to respond to a request to staff, thereby making it impossible to continue with the exhaustion process.  Doc. 1, at 5-6; Doc. 65, at 5-6, 11-12.  But this argument overlooks the Plaintiff's ability to file a grievance, asserting only the issue of a lack of response, if the request to staff had not been answered after thirty days.  *See supra* § III.A.2 (citing Special Report, Exhibit 17 at 6).  The availability of this avenue of relief curtails the Plaintiff's argument involving the lack of available remedies.  *See Smith v. Beck*, 165 Fed. Appx. 681, 684-85 (10th Cir. 2006) (holding that the lack of a response does not excuse a failure to exhaust administrative remedies because Oklahoma prisoners can "continue to appeal within the prison system even if they do not receive responses to their Requests to Staff").

### c. Placement on grievance restriction.

The Plaintiff finally complains that Lawton Correctional Facility officials placed him on grievance restriction, thus thwarting his efforts to exhaust

administrative remedies.  Doc. 1, Exhibit A at 24; Doc. 65, at 7-8, 11.  Again, the Plaintiff's argument is misguided.

First, the policy specifically provides that an inmate on grievance restriction may continue to use the grievance procedures – he must simply provide additional information when doing so.  *See* Special Report, Exhibit 17 at 15.  Thus, the remedy remains available.  *See, e.g., Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010) (affirming the district courts rejection of plaintiff's claim that placement on grievance restriction made the exhaustion process unavailable).

Second, the evidence does not reflect that any rejection of the Plaintiff's administrative documents related to the Plaintiff's grievance restriction.  *See* Special Report, Exhibits 9, 18, 19; Doc. 1, Exhibit A at 2-58.  Because the Defendants have presented evidence that the Plaintiff had available administrative remedies at the private prison, he has failed to create a genuine issue of material fact on the issue.

### 4.    The evidence regarding exhaustion.

Both the Defendants and the Plaintiff provide evidence regarding his attempts to administratively exhaust his claims.  *See* Special Report, Exhibits 9, 18, 19; Doc. 1, Exhibit A at 2-58; *see also* Doc. 65, at 9 (the Plaintiff's statement that he has "included every R.T.S. I filed at L.C.F., Grievance, and

Grievance Appeal").  That evidence shows that many claims are unexhausted, but that a genuine fact is in dispute regarding the exhaustion of other claims.

### a.    Evidence showing unexhausted claims.

Review of the evidence finds no requests to staff or facility grievances on the allegations involving:

Claim 2(a).  lack of mattress and pillow from July 18, 2011, to August 3, 2011;

Claim 7(a).  denial of any Bible from July 18, 2011, to August 29, 2011;

Claim 9(c).  denial of a sack lunch on September 6, 2011;

Claim 11.    lack of liquids and running water from September 12, 2011, to September 13, 2011;

Claim 14.    only a "small amount" of law library access;[6] and

Claim 15.    denial of a haircut, sack lunch, and running water from September 17, 2011, to September 19, 2011.[7]

---

[6]    The Plaintiff provided a request to staff which at first glance involved denial of access to the law library.  *See* Doc. 1, Exhibit A at 12.  However it is clear that in that document the Plaintiff was only complaining about the inability to make legal copies.  *See id.*

[7]    In September 2011, the Plaintiff filed a request to staff detailing the constitutional and statutory requirements for prison conditions.  *See* Doc. 1, Exhibit A at 48.  It did not specifically mention the denial of a mattress and pillow, sack lunches, running water, law library access, or a haircut.  *See id.* Further, the request to staff was rejected on grounds that it contained more than one issue.  *See id.*

The Plaintiff offers no explanation for his failure to even begin the exhaustion process for these issues.  Accordingly, the Court should grant the Defendants' summary judgment motion on these claims (Claims 2(a), 7(a), 9(c), 11, 14, and 15) based on nonexhaustion of administrative remedies.

For the claims involving:

Claim 5.    denial of outdoor recreation from July 18, 2011, to August 3, 2011, and August 20, 2011, to September 21, 2011;

Claim 12.   limitation to sack lunches from August 21, 2011, to September 7, 2011; and

Claim 13.   lack of contact with a psychologist or case manager after July 2011,

the record reflects that the Plaintiff filed several requests to staff.  *See* Doc. 1, Exhibit A at 45, 51, 53, 56, 57.  However, there is no evidence that he filed any grievances on any of these claims.[8]  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the Prison Litigation Reform Act] for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  Thus, the

---

[8]    One request to staff, involving the lack of outdoor recreation from July 18, 2011, to August 2, 2011, was rejected because the Plaintiff already had a pending grievance on some of the issues.  *See* Doc. 1, Exhibit A at 45.  If the Plaintiff had disagreed regarding whether a grievance was pending, he could have appealed.  *See supra* § III.A.2.

Defendants are also entitled to summary judgment on Claims 5, 12, and 13 based on the Plaintiff's nonexhaustion of administrative remedies.

The Defendants are also entitled to judgment as a matter of law on the Plaintiff's claim involving the denial of cleaning supplies from July 18, 2011, to August 29, 2011 (Claim 1). The Plaintiff raised this issue in a request to staff, and when he was unsatisfied with the response the Plaintiff filed a grievance, numbered 11-459. *See* Doc. 1, Exhibit A at 22, 29. That grievance was returned unanswered however because the Plaintiff had requested disciplinary action against a staff member. *See id.* at 20. The Plaintiff eventually resubmitted the grievance, which was renumbered 11-475, but he failed to readdress his concerns about cleaning supplies. *See id.* at 28. Consequently, the Plaintiff never properly completed the exhaustion process as to Claim 1. *See Jernigan*, 304 F.3d at 1032.

Finally, the record demonstrates that the Plaintiff failed to exhaust his claim regarding excessive force on July 18, 2011 (Claim 16). The Plaintiff had seven days from the date of the incident to file a request to staff. *See* Special Report, Exhibit 17 at 6. But the Plaintiff waited ten days, filing his request to staff on July 28, 2011. *See* Doc. 1, Exhibit A at 17. According to the Plaintiff, prison officials did not respond, and indeed the Plaintiff's document is stamped "received" by the Lawton Correctional Facility but there is no written

16

disposition.  *See id.*  After thirty days, the Plaintiff should have filed a separate grievance, arguing only the lack of response to his request to staff.  *See supra* § III.A.2.  The evidence does not reflect that the Plaintiff took any such measure. Instead, the Plaintiff proceeded with a grievance on August 30, 2011 – thirty-four days after filing his request to staff.  *See* Doc. 1, Exhibit A at 15.  That grievance was rejected at the facility level on grounds that it: (1) did not reflect a response to the request to staff, (2) was out of time from the date of the incident, and (3) requested disciplinary action against a staff member.  *Id.* at 14.

The Plaintiff blames the lack of response to the request to staff for the grievance rejection.  *See id.* (handwritten note at the top of the page).  But as discussed above, the Plaintiff could have rectified that situation through the filing of a grievance.  *See supra* § III.A.2.  He did not, and he cannot now blame prison officials for the omission.  *See, e.g., Jernigan*, 304 F.3d at 1033 ("[An inmate] may not successfully argue that he has exhausted his administrative remedies by, in essence, failing to employ them . . . .").  Further, as just discussed, the grievance was independently insufficient on grounds that the Plaintiff was out of time from the date of the incident and because he sought disciplinary action against a staff member.  Because these infirmities are the result of the Plaintiff's failure to properly follow grievance procedures, the

excessive force claim remains unexhausted and the Defendants are entitled to summary judgment on Claim 16.

### b. Evidence establishing a genuine disputed fact on the issue of exhaustion.

For the remaining claims, the Defendants have not demonstrated an entitlement to judgment as a matter of law on the issue of exhaustion. The relevant claims involve:

Claim 2(b).   lack of sheets or blankets from July 18, 2011, to August 3, 2011;

Claim 3(a).   minimal showers from July 18, 2011, to August 3, 2011;

Claim 3(b).   complete lack of hygiene items from July 18, 2011, to August 3, 2011;

Claim 4.   lack of clean clothes from July 18, 2011, to August 3, 2011;

Claim 6.   lack of writing supplies, legal work, personal addresses from July 18, 2011, to August 3, 2011; and

Claim 8.   denial of all property, clothing, and hygiene items from August 25, 2011, to August 29, 2011.

For these claims, the Plaintiff filed a request to staff and then a grievance, numbered 11-459. *See* Doc. 1, Exhibit A at 22-23, 29-30. That grievance was rejected on procedural grounds because the Plaintiff sought disciplinary actions against a staff member. *See id.* at 20. Based on that rejection, the Defendants seek summary judgment on the grounds of nonexhaustion of administrative

remedies.  Doc. 61, at 10 (citing Special Report at 11-13).  However, the Plaintiff has presented evidence that he resubmitted the grievance, which was renumbered 11-475.  *See* Doc. 1, Exhibit A at 28.  The Defendants do not acknowledge the second grievance, and there is no indication on the grievance form as to its disposition.  *See id.*  Without any evidence that the facility head rejected this grievance, the Court cannot say as a matter of law that the claims are unexhausted.[9]  Therefore, on these claims the Defendants' motion for summary judgment based on nonexhaustion should be denied.

### 5.   Summary.

Based on nonexhaustion of administrative remedies, the Defendants are entitled to summary judgment on

- Claims 1; 2(a); 5; 7(a); 9(c); 11; 12; 13; 14; 15; and 16.

The Defendants either concede exhaustion or are not entitled to judgment as a matter of law based on nonexhaustion for

- Claims 2(b); 3(a), (b); 4; 6; 7(b); 8; 9(a), (b); and 10.

---

[9]   Without knowing the disposition of the grievance, the Court cannot know whether the Plaintiff was required to file a grievance appeal with the Department of Corrections reviewing authority.

**B.     The Defendants' motion for summary judgment or dismissal on the conditions of confinement claims.**

On the merits of the Plaintiff's remaining Eighth Amendment conditions of confinement claims, the Defendants seek summary judgment or dismissal. Doc. 61, at 17-23.  Again, the motion should be granted in part and denied in part.

**1.     The standard for the Eighth Amendment claims.**

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To succeed on his prima facie case, the Plaintiff must demonstrate both an objective and subjective component.  The objective component requires that the conditions are "sufficiently serious" to deny basic life necessities. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Seriousness of the conditions turns on the severity and duration of the alleged deprivation. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  The subjective component requires prison officials to have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297.  Culpability occurs when prison officials act with deliberate indifference to a substantial risk of serious harm for an inmate. *See Farmer*, 511 U.S. at 834.

## 2.      The Defendants' motion for summary judgment.

In part, the Defendants seek summary judgment on the remaining conditions of confinement claims – Claims 2(b); 3(a), (b); 4; 6; 7(b); 8; 9(a), (b); 10. Doc. 61, at 17-22.  The Court should deny the motion.

The Defendants argue that the Plaintiff's "allegations are contrary to the evidence."  *Id.* at 8.  But the "evidence" the Defendants offer shows only that a non-defendant physician authorized sheets or blankets and hygiene items, etc. in the Plaintiff's cell and that a non-defendant physician's assistant believes that the Plaintiff could have requested clean clothing.  *See id.* (citing Special Report, Exhibit 5 & 7).  This "evidence" does not establish that the Plaintiff actually received any of the listed items.  At best, the Defendants' argument creates a classic swearing match, and under such circumstances, the Court cannot grant summary judgment.  *See Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003) ("We recognize that at the summary judgment stage '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (quotation omitted)).

### 3.     The Defendants' motion to dismiss.

The Defendants also seek dismissal on Claims 2(b); 3(a), (b); 4; 6; 7(b); 8; 9(a), (b); 10.  Accepting the Plaintiff's allegations as true, the Court should agree for Claims 3(a); 8; 9(a), (b); and 10 and disagree for Claims 2(b); 3(b); 4; and 6.

> **a.     The Plaintiff's claims involving infrequent showers from July 18, 2011, to August 3, 2011 (Claim 3(a)); denial of all property, clothing and hygiene items from August 25, 2011, to August 29, 2011 (Claim 8); lack of one meal on August 23, 2011 and September 4, 2011 (Claims 9(a), (b)); and denial of one shower on September 5, 2011 (Claim 10).**

For Claims 3(a); 8; 9(a), (b); and 10, the Defendants focus on the objective component of the Eighth Amendment standard, arguing that even if true, the Plaintiff's allegations are "insufficient to support a claim that the Plaintiff was exposed to a sufficiently substantial 'risk of serious damage to his future health.'"  Doc. 61, at 19 (citation and ellipsis omitted).  Because the Plaintiff's allegations do not satisfy the objective component of the Eighth Amendment standard, the undersigned recommends the granting of the Defendants' motion to dismiss as to these claims.

For example, in Claims 3(a) and 10, the Plaintiff alleges that he was able to shower four times in sixteen days, and was separately denied only one shower on September 5, 2011.  Doc. 1, at 6-7.  Even if true, these claims do not rise to

the level of a constitutional violation.  *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670-71 (7th Cir. 2012) (affirming the district court's finding that there was no violation of the Eighth Amendment where plaintiff admitted that he showered "four times a month"); *Uman v. Hoffer*, No. 08-3123-SAC, 2011 WL 4496596, at *2 (D. Kan. Sept. 27, 2011) (unpublished district court order) (holding that "the denial of a shower for five days is not sufficient to state a claim for relief under the Eight Amendment" and collecting cases finding that denial of a shower for as long as thirteen days to two weeks did not rise to the level of a constitutional violation).

Further, the Plaintiff alleges in Claim 8 that he was denied all property, clothing, and hygiene items, but only for five days.  *Id.* at 7.  The denial of these items for only five days does not rise to the level of a constitutional violation. *See Estrada v. Kruse*, 38 Fed. Appx. 498, 499 (10th Cir. 2002) (affirming the district court's dismissal of inmate's claim that he was held in a "stripped" segregation cell for five days without clothing, bedding, or personal hygiene items because the allegations failed to rise to the level of a constitutional violation).

Finally, Claims 9(a) and 9(b) – denial of one sack lunch on two separate days – do not amount to an Eighth Amendment violation.  *See Foster v. Runnels*, 554 F.3d 807, 812 n.1 (9th Cir. 2009) (holding that inmate's claim that he was

denied one meal on two separate days demonstrated "relatively isolated occurrences and [did] not appear to rise to the level of a constitutional violation"); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period.  We are therefore doubtful that Talib was denied anything close to a minimal measure of life's necessities.").

>    **b.    The Plaintiff's claims involving the deprivation of sheets or blankets (Claim 2(b)); hygiene items (Claim 3(b)); clean clothes (Claim 4); and writing supplies, etc. (Claim 6); from July 18, 2011, to August 3, 2011.**

The Plaintiff has also alleged that for sixteen days – from July 18, 2011, to August 3, 2011 – he was again denied sheets or blankets (Claim 2(b)); hygiene items (Claim 3(b)); clean clothes (Claim 4); and writing supplies (Claim 6).  *See* Doc. 1 at 2, 6.  These claims should survive the Defendants' motion to dismiss.

>    **i.    The objective component.**

Again, the Defendants focus on the alleged lack of severity for these claims.  *See* Doc. 61, at 19.  Contrary to the Defendants' assertion, the undersigned recommends finding that these allegations state a valid claim for relief under the Eighth Amendment.

The Tenth Circuit reached a similar decision in *Allen v. Avance*, 491 Fed. Appx. 1 (10th Cir. 2012).  There, a pre-trial detainee had alleged placement in

an isolation cell for twelve days without bedding, toiletries, towel, toothbrush, legal papers and personal property. *See Allen*, 491 Fed. Appx. at 1. The district court denied the defendant's motion for summary judgment based on disputed facts and denied qualified immunity. *Id.* at 3. On appeal, the prison official argued in part that the plaintiff's allegations had failed to rise to the level of a constitutional violation. *Id.* at 4. The Tenth Circuit disagreed, holding:

> As we recognized in *Mitchell v. Maynard*, when a prisoner is "provided no mattress, blankets or bedding of any kind, . . . not allowed to leave his cell for exercise, not provided with writing utensils, not provided with adequate ventilation, . . . and only sometimes allowed minimal amounts of toilet paper" and "these conditions supposedly lasted for a period of days, weeks and months" this could constitute a violation of the prisoner's right to be free of cruel and unusual punishments.

*Id.* at 4-5 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1443 (10th Cir. 1996)). Thus, the Court held that the plaintiff's twelve-day denial of the relevant items, if true, would support "a constitutional violation of [the inmate's] right to be free from cruel and unusual punishment." *Id.* at 5.

Based on the similarities to the present case, *Allen* is persuasive. There the plaintiff alleged a denial of bedding, hygiene times, legal papers, etc. for twelve days. *See id.* And the Tenth Circuit held that twelve-day duration sufficient to state a valid claim for relief under the Eighth Amendment. Accepting the Plaintiff's claims as true, the Plaintiff was deprived of the same

items for an even longer duration.  Accordingly, the Court should overrule the Defendants' motion to dismiss based on the alleged lack of seriousness for Claims 2(b); 3(b); 4; and 6.

### ii.    The subjective component.

For Claims 2(b); 3(b); 4; and 6, the Defendants fail to challenge or seek dismissal based on the subjective component, or deliberate indifference requirement, of the Eighth Amendment standard.  *See* Doc. 61, at 18-19.  The undersigned has nevertheless considered this element on screening and finds that the Plaintiff has stated a valid claim for relief.

As noted above, the subjective component of the Eighth Amendment requires prison officials to have a "sufficiently culpable state of mind" to be held liable for a constitutional violation.  *Wilson*, 501 U.S. at 297.  In other words, the official must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Here, the Plaintiff alleges that he informed prison officials of the lack of sheets or blankets, hygiene items, clean clothes, and writing supplies, etc. from July 18, 2011, to August 3, 2011, through "grievances, request to staff complaints, [and] informal conversations" yet officials "allow[ed] these violations to take place" "willfull[y], and knowingly."  Doc. 1, at 8; *see also id.*, Exhibit A at 29 (request to staff dated July 26, 2011); *DeSpain v. Uphoff*, 264

F.3d 965, 975 (10th Cir. 2001) (holding that because it is "difficult, if not impossible, to prove another person's actual state of mind," deliberate indifference may be "inferred from circumstantial evidence").   Thus, on screening, the undersigned finds that these allegations are sufficient to establish the subjective component of the Eighth Amendment.

### 4.   Summary.

The undersigned recommends denial of the Defendants' motion for summary judgment on the Plaintiff's remaining conditions of confinement claims.  On the Defendants' motion to dismiss, the Court should grant dismissal of the claims involving minimal showers in sixteen days (Claim 3(a)); a missing shower (Claim 10); denial of all property and hygiene items for five days (Claim 8); and the denial of one meal on two separate days (Claims 9(a), (b)).  For these claims, the Defendants are entitled to dismissal with prejudice.  *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (when an amendment would be futile, the dismissal should be with prejudice).  However, the Court should deny the motion to dismiss on Claims 2(b); 3(b); 4; and 6, involving a sixteen-day denial of sheets or blankets, hygiene items, clean clothes, and writing supplies, etc.

**C.     The Defendants' motion to dismiss on the Plaintiff's Claim 7(b) involving denial of his personal study Bible.**

In Claim 7(b), the Plaintiff seeks liability based on denial of access to his own personal study Bible after August 29, 2011.  Doc. 1, at 6.  The private prison officials seek dismissal of this claim and the Court should grant the motion.

The parties agree that the Plaintiff sought and was granted permission to have his personal study Bible, and that the Plaintiff did not receive that personal study Bible.  The parties also agree that officials gave the Plaintiff access to a "substitute" Bible after August 29, 2011.  *Id.* at 6; Doc. 16, at 19 and Special Report, Exhibit 10 at 1.  The Plaintiff argues that his personal study Bible had "significant value" based on his sentimental attachment to it.  Doc. 1, at 6.

"Under the free exercise clause of the first amendment, an inmate must be accorded a reasonable opportunity to pursue his religion."  *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991) (citation omitted).  However, "[a] prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so."  *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) (citing *Hammons v. Saffle*, 348 F.3d 1250, 1256 (10th Cir. 2003)).

The Plaintiff does not dispute that officials made another Bible available to him.  Nor does he argue that the substitute Bible failed to conform with his beliefs or prevented the exercise of his religion.  *See* Doc. 1, at 6.  Accordingly, this claim fails to state a valid claim for relief under the First Amendment for the failure to provide him with his personal study Bible.  *See, e.g., Tarply v. Allen County, Ind.*, 312 F.3d 895, 898-99 (7th Cir. 2002) (holding no violation of the First Amendment where jail had prohibited access to inmate's own Bible but had provided an alternative Bible, in part because inmate did not argue that the alternative Bible prevented the exercise of his religion and because the alternative Bible "offered [the plaintiff] the essential materials for his religious studies").

### D.    Defendants Chester, Stouffer and Whitten's motion to dismiss on a lack of personal participation.

Defendants C. Chester, Mrs. Stouffer and Rick Whitten also seek dismissal based on the Plaintiff's failure to sufficiently allege their personal participation in any constitutional violation.  Doc. 61, at 14-17.  Based on the foregoing recommendations, the Plaintiff's only remaining claims involve the deprivation of sheets or blankets (Claim 2(b)), hygiene items (Claim 3(b)), clean clothes (Claim 4), and writing supplies, etc. (Claim 6) from July 18, 2011, to August 3, 2011.

Generally, personal participation is necessary for individual liability under § 1983. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim." (citations omitted)). Thus, the Plaintiff "must plead that each . . . defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In some cases, individual liability may also exist for a defendant-supervisor who "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" which causes the deprivation of a constitutional right. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

Applying the Defendants' argument to these remaining claims, the Court should agree that the Plaintiff's complaint fails to adequately allege either Mr. Chester or Mrs. Stouffer's personal participation,[10] and should grant these individuals dismissal without prejudice. However, the Plaintiff has sufficiently

---

[10]    In response to the Defendants' motion, the Plaintiff attempts to set forth more specific allegations of personal participation. *See* Doc. 65, at 13-15, 20. However, on a motion to dismiss the question is whether the Plaintiff adequately plead personal participation in his complaint. *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). And, the Court does not ordinarily consider theories not adequately raised in a complaint. *See Fuqua v. Lindsey Mgm't Co., Inc.*, 321 Fed. Appx. 732, 734-35 (10th Cir. 2009) (citing *Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir. 1997)).

alleged Mr. Whitten's personal participation in the remaining conditions of confinement claims.

## 1. Defendant Stouffer.

For Defendant Stouffer, identified as the Health Care Administrator, the allegations in the complaint wholly fail to establish personal participation. The Plaintiff makes a general allegation that Defendant Stouffer, along with five other officials, "helped and contributed to the violation[s] . . . through approvals, grievances, request to staff complaints, informal conversations, personal acts, appeals process, and not following policy and procedures . . . ." Doc. 1, at 8; *see also id.* at 9. Despite this sweeping description, the Plaintiff fails to explain how any of Defendant Stouffer's own personal actions lead to a constitutional violation. He also fails to allege that Defendant Stouffer was responsible for the creation or operation of a policy which allegedly created the unconstitutional conditions of confinement. Thus, even with liberal construction, the Court should find that the complaint fails to state a valid claim for relief against Defendant Stouffer.

## 2. Defendant Chester.

The same is true for Defendant Chester, identified as the Lawton Correctional Facility Warden. For example, on the surviving claims involving a lack of sheets or blankets (Claim 2(b)); hygiene items (Claim 3(b)); clean

31

clothes (Claim 4); and writing supplies, etc. (Claim 6); from July 18, 2011 to August 3, 2011, the Plaintiff suggests that Defendant Chester knew about the alleged violations of his subordinates and nevertheless acquiesced in them. *See* Doc. 1, at 7-8. But this allegation fails to state a valid claim for relief for two reasons.

First, the Supreme Court rejected a similar argument noting:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.

*Iqbal*, 556 U.S. at 677. After that holding, the Tenth Circuit has held that the only remaining "supervisory" liability rests with a defendant who "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" which caused the constitutional violation. *See Dodds*, 614 F.3d at 1199. Thus, under *Iqbal*, Defendant Chester's alleged knowledge and acquiescence – even if true, would not support a claim for individual liability. *See also Phillips v. Tiona*, No. 12-1055, 2013 WL 239891, at *6 (10th Cir. Jan. 23, 2013) ("[U]nder *Iqbal*, a supervisor's mere knowledge of his

subordinate's discriminatory purpose and acquiescence are insufficient to establish a constitutional violation.").

Second, the Plaintiff's argument fails even if Defendant Chester could be found personally liable for his "knowledge and acquiescence" because the grievances and conversation took place *after* the alleged violations had ended on August 3, 2011. *See* Doc. 1, at 7 (the Plaintiff's statement that he personally spoke to Warden Chester on September 2, 2011) & Exhibit A at 22 (grievance complaining about the conditions of confinement directed to Defendant Chester and dated August 29, 2011), 28 (grievance directed to Defendant Chester, dated September 9, 2011, complaining about the conditions of confinement). Without a showing that Defendant Chester was even aware of the alleged violations while they were occurring, the Plaintiff cannot demonstrate a "'deliberate, intentional act by [Warden Chester] to violate [the Plaintiff's] constitutional rights." *Serna v. Co. Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

### 3. Defendant Whitten.

Conversely, the Plaintiff did notify Defendant Whitten that he was suffering from the lack of sheets or blankets, hygiene items, clean clothes, writing supplies, etc. during the time in which those conditions were ongoing. *See* Doc. 1, Exhibit A at 29 (request to staff dated July 26, 2011 complaining about the conditions of confinement and directed to Defendant Whitten). And,

33

Defendant Whitten's response that "we'll look at it again," when liberally examined, could be construed as showing the authority to correct the alleged violations.  *See id.*

Typically, the denial of a grievance "by itself without any connection to the violation of constitutional rights alleged by plaintiff" will not establish personal participation.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  But the Court has also cautioned that it does:

> not mean to rule out the possibility of liability where the officer denying a grievance *has an independent responsibility* for the wrong in question and the grievance *provides the necessary notice of the wrong* or the effective means to correct it.

*Arocho v. Nafziger*, 367 Fed. Appx. 942, 955 (10th Cir. 2010) (emphasis added).

Liberally construed, the Plaintiff's complaint does not suggest that Defendant Whitten is liable simply because he failed to adequately respond to a grievance, but that the security warden knew about the alleged violations, acknowledged as much in his response, and did nothing to correct the situation. With that interpretation, the Plaintiff has stated a facially plausible claim for Defendant Whitten's personal participation in Claims 2(b); 3(b); 4; and 6.

## Conclusion.

The Defendants are entitled to summary judgment on the Plaintiff's allegations involving:

Claim 1.     denial of cleaning supplies from July 18, 2011, to August 29, 2011;

Claim 2(a).  lack of mattress and pillow from July 18, 2011, to August 3, 2011;

Claim 5.     denial of outdoor recreation from July 18, 2011, to August 3, 2011, and August 20, 2011, to September 21, 2011;

Claim 7(a).  denial of any Bible from July 18, 2011, to August 29, 2011;

Claim 9(c).  failure to provide a sack lunch on September 6, 2011;

Claim 11.    lack of liquids and running water from September 12, 2011, to September 13, 2011;

Claim 12.    limitation to sack lunches from August 21, 2011, to September 7, 2011;

Claim 13.    lack of contact with a psychologist or case manager after July 2011;

Claim 14.    only a "small amount" of law library access;

Claim 15.    denial of a haircut, sack lunch, and running water from September 17, 2011, to September 19, 2011; and

Claim 16.    excessive force on July 18, 2011.

Dismissal with prejudice should be granted on the claims involving:

Claim 3(a).  minimal showers from July 18, 2011, to August 3, 2011;

Claim 8.     denial of all property, clothing, and hygiene items from August 25, 2011, to August 29, 2011;

Claim 9(a).  failure to provide a sack lunch on August 23, 2011;

Claim 9(b).   failure to provide a sack lunch on September 4, 2011; and

Claim 10.   denial of a shower on September 5, 2011.

The Court should dismiss without prejudice Claim 7(b) involving denial of the Plaintiff's personal study Bible after August 29, 2011.

Adoption of this recommendation would leave pending the Plaintiff's claims involving a lack of sheets or blankets (Claim 2(b)); hygiene items (Claim 3(b)); clean clothes (Claim 4); and writing supplies, etc. (Claim 6); from July 18, 2011, to August 3, 2011.   However, on these remaining claims, Defendants Chester and Stouffer are entitled to dismissal without prejudice for lack of their personal participation.   Thus, the remaining claims involve only Defendant Whitten in his individual and official capacities.

## Notice of the right to object.

The parties can object to this report.   To object, the party must file an objection with the Clerk of this Court by May 14, 2013.   *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C.A. § 636(b)(1).   The failure to timely object would foreclose appellate review of the suggested ruling.   *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**Status of the referral**.

The referral is not discharged.

Entered this 23rd day of April, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE